**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| TAYLOR ENERGY COMPANY LLC, | ) | CIVIL ACTION | |
| | ) | | |
| Plaintiff, | ) | No.: | 18-14046 c/w 18-14051 |
| | ) | | |
| v. | ) | Refers to: | 18-14046 |
| | ) | | |
| CAPTAIN KRISTI M. LUTTRELL, et al., | ) | Section: | B(5) |
| | ) | | |
| Defendants, | ) | Judge: | Hon. Ivan L. R. Lemelle |
| | ) | | |
| HEALTHY GULF, | ) | Magistrate: | Hon. Michael North |
| | ) | | |
| Applicant-Intervenor-Defendant. | ) | | |

## MEMORANDUM IN SUPPORT OF APPLICANT-INTERVENOR-DEFENDANT'S MOTION TO INTERVENE

Healthy Gulf (f/k/a Gulf Restoration Network) seeks to intervene as a defendant in this case (No. 18-14046) to protect its and its members interests in ensuring the ongoing oil spill from the Taylor Energy Company LLC ("Taylor Energy") site at Mississippi Canyon Block 20 is contained and remediated in a timely manner. Defendants Captain Kristi M. Luttrell and the United States of America, acting by and through the U.S. Coast Guard (collectively, "Coast Guard"), took long-overdue administrative action in October and November 2018 — after more than 14 years of continuous oil discharge — to begin implementing a temporary system to contain and recover oil being discharged from the site. Plaintiff Taylor Energy seeks an order vacating the Coast Guard's actions and enjoining the agency from implementing the necessary actions to contain the spill. Taylor Energy's requested relief would result in additional oil flowing into the Gulf of Mexico, causing serious harm to the Gulf of Mexico and to Healthy Gulf and its members.

Healthy Gulf would advocate a unique position as an intervenor-defendant in this case. Healthy Gulf and its members have long worked to protect the Gulf of Mexico and its coastal communities from environmental harms, especially from the repeated injuries of oil spills. Healthy Gulf was one of the first public-interest groups to alert the federal government and public to the danger posed by Taylor Energy's uncontrolled spill. Since 2011, Healthy Gulf has pressed both federal agencies and Taylor Energy to act with greater urgency to address the ongoing oil spill at the Taylor Energy site. The organization and its members have protectable interests in clean and healthy Gulf wildlife, ecosystems, waters, and fisheries. Those interests will be seriously impaired if Taylor Energy prevails in this case and blocks the oil spill containment efforts. Healthy Gulf therefore respectfully requests that this Court grant its motion to intervene (either as of right or permissively) as a defendant to protect its and its members' interests in ensuring the federal oil spill containment effort is not weakened, vacated, or rendered ineffective, and to oppose Taylor Energy's efforts to undermine federal authority to contain and stop oil spills in our nation's coastal and offshore waters.

## BACKGROUND

Oil began streaming from the seafloor at the Taylor Energy site immediately after the company's production platform buckled and sank on September 16, 2004. Compl. ¶¶ 8, 11, ECF No. 1. Taylor Energy detected the leaking oil shortly after its platform collapsed. *Id.* ¶ 11. But the company took no action to stop the spill for the next three years. *See id.* ¶¶ 13–16 (noting first action to "intervene[e]" in spill occurred after June 2007). The Coast Guard initiated an oil spill response action in the fall of 2007 by establishing a "Unified Command" to coordinate the response. *Id.* ¶ 16. Yet the public did not become aware that oil was flowing into Gulf waters from the site until May 2010 — nearly six years after it began — when Healthy Gulf and other

groups monitoring the BP *Deepwater Horizon* oil spill noticed a large oil sheen separate from the larger spill.  Decl. of S. Eustis ¶ 6, attached as Ex. B.

Taylor Energy and the federal government debated what, if anything, should be done to remedy the spill over the next eight years.  *See* Compl. ¶¶ 14–15, 20–32.  All the while, the site continued emitting oil into the Gulf of Mexico at rates as high hundreds of barrels per day.  *See* Admin. Order No. 19-001, at 1, ECF No. 1-3.

The Coast Guard finally initiated action on October 23, 2018 — more than fourteen years after the spill began — to force Taylor Energy to immediately begin making efforts towards containment.  Compl. ¶ 38; *see* Admin. Order No. 19-001.  After Taylor Energy objected, the Coast Guard unilaterally contracted with Couvillion Group to deploy a containment system as soon as possible, Compl. ¶¶ 61–65 — precisely the type of spill control actions that Healthy Gulf has sought for years, *see* Eustis Decl. ¶¶ 7–9.

Taylor Energy promptly filed the two lawsuits before this Court to block any containment efforts by the Coast Guard or Couvillion.  Compl., ECF No. 1; Complaint, *Taylor Energy Co. v. Couvillion Grp.*, 2:18-cv-14051-JCZ-KWR (E.D. La. Dec. 22, 2018).  Taylor Energy seeks relief that would allow oil to continue flowing indefinitely from its wrecked drilling site into the Gulf of Mexico.  *See* Compl., at 52 (prayer for relief).  Healthy Gulf moves to intervene in this action to protect its and its members interests in preventing further oil discharge from the Taylor Energy site into the Gulf.

## APPLICANT FOR INTERVENTION

Healthy Gulf (f/k/a Gulf Restoration Network) is a non-profit network of community, conservation, environmental, and fishing groups and individuals committed to empowering people to protect and restore the natural resources of the Gulf of Mexico.  Eustis Decl. ¶ 1. Healthy Gulf is headquartered in New Orleans, and has over 1,000 members throughout the five

3

Gulf states of Louisiana, Texas, Mississippi, Alabama, and Florida, and nationwide. *Id.* Healthy Gulf's members fish, boat, swim, dive, observe wildlife, and recreate in the Gulf of Mexico, as well as study its ecosystems and species, enjoy its beaches, and eat its seafood. *Id.* ¶ 2. To protect these interests, the organization has, for its twenty-four year history, been at the forefront of efforts to strengthen oversight of the offshore oil and gas industry and to require the industry to reduce its harmful effects on the Gulf's extraordinary aesthetic, economic, and environmental resources. Eustis Decl. ¶ 5. Healthy Gulf also has spent nearly a decade monitoring the effects of oil and gas operations off the Louisiana Coast using overflights and boat-based sampling and observation methods. *Id.* ¶ 5–6, 10. Healthy Gulf's work in this field has provided it with unique expertise on the oil and gas industry's impacts to the Gulf of Mexico and Louisiana Coast.

Healthy Gulf was one of the first organizations to bring public attention to the Taylor Energy oil spill. *See id.* ¶ 6. To protect the interests of its members, Healthy Gulf has made numerous efforts seeking to hold Taylor Energy accountable and force action to stop its oil spill for nearly a decade. *Id.* ¶¶ 6–9. For instance, Healthy Gulf filed spill reports with the National Response Center about the Taylor Energy spill. *Id.* ¶ 8. The organization has called for action to stop the spill through the media and in several blog posts, as well as in two online petitions. *Id.* ¶¶ 6, 9. In addition, Healthy Gulf filed a Freedom of Information Act request with the Bureau of Ocean Energy Management, Regulation, and Enforcement in 2011 seeking records related to the Taylor Energy spill to understand and inform its members and the public as to why the leak had not been stopped and whether any containment efforts were contemplated. *Id.* ¶ 7.

Healthy Gulf's members rely on the Coast Guard's remediation actions to end the ongoing harm the Taylor Energy oil spill is having on the Gulf's wildlife, ecosystems, and

4

fisheries.  *Id.* ¶¶ 8, 17–22.  The past, present, and future enjoyment of the Gulf of Mexico's resources by Healthy Gulf and its members will be irreparably harmed if Taylor Energy's requests for relief are granted in its case against the Coast Guard.  *See generally* Eustis Decl.  As explained below, these interests — and the injuries to them if Taylor Energy's requested relief is granted — satisfy the requirements for intervention as of right.

## ARGUMENT

The Taylor Energy oil spill has inflicted serious harm to the Gulf of Mexico over the past fourteen years, impairing the interests of Healthy Gulf and its members in a clean marine and coastal environment, healthy wildlife, and pollution-free seafood.  The federal government has finally taken action to stop that ongoing harm.  Taylor Energy, through this litigation, seeks a court order to block the containment of the spill; essentially to force the federal government to allow the oil spill to continue.  This litigation thus threatens to vacate the federal actions that protect Healthy Gulf's and its members' interests.  Under the Federal Rule of Civil Procedure 24 intervention standards discussed below, Healthy Gulf's motion to intervene should be granted as of right, or alternatively by permission, so that it may have the chance to participate in this case and seek to protect its interests and the interests of its members.

**I.       Healthy Gulf Is Entitled to Intervene as of Right.**

Rule 24(a) of the Federal Rules of Civil Procedures provides, in pertinent part, "On timely motion, the court must permit anyone to intervene . . . who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  The Fifth Circuit accordingly applies a four-part test to evaluate motions to intervene under this rule: "(1) the application . . . must be timely; (2) the applicant must have an interest relating to the

5

property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (alteration in original) (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). Rule 24 "'is to be liberally construed,' with 'doubts resolved in favor of the proposed intervenor.'" *Entergy Gulf States Louisiana, L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (citation omitted). Healthy Gulf satisfies each of the Rule's elements.[1]

### A. Healthy Gulf's Motion to Intervene Is Timely.

Timeliness is a "contextual" inquiry: "absolute measures of timelines should be ignored." *Wal–Mart Stores*, 834 F.3d at 565 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Espy*, 18 F.3d at 1205. Courts in this Circuit accordingly consider four factors in determining timeliness: "(1) the length of time applicants knew or should have known of their interest in the case; (2) prejudice to existing parties caused by applicants' delay; (3) prejudice to applicants if their motion is denied; and (4) any unusual circumstances." *Ruiz v. Estelle*, 161 F.3d 814, 827 (5th Cir. 1998). Healthy Gulf's motion is timely because the case against the Coast Guard is still in its nascent stage and intervention will not prejudice the existing parties.

---

[1] Healthy Gulf is not required to establish standing to intervene because it is seeking the same relief as at least one party in this case (the Coast Guard): that is, denial of judgment for Taylor Energy on its four causes of action. *See Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998) ("Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so.").

6

Healthy Gulf is filing this motion less than three months after Taylor Energy filed its complaint and before the Coast Guard has filed its answer. *See* Compl. (Dec. 22, 2018), ECF No. 1; Order (Feb. 22, 2019), ECF No. 39. The length of time that has elapsed since Healthy Gulf knew or should have known of its interest in this case is minimal and not unreasonable. *See, e.g.*, *Ass'n of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986) (holding five month lapse was not unreasonable); *Aransas Project v. Shaw*, No. C-10-75, 2010 WL 1644645, at *2 (S.D. Tex. April 23, 2010) (finding motion timely when filed prior to the submission of any answers and before the pretrial conference).

Granting Healthy Gulf intervention at this stage also will not prejudice the existing parties. "[P]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Espy*, 18 F.3d at 1206. No substantive proceedings or motions have been filed in the Coast Guard litigation (No. 18-14046) in this consolidated case. Healthy Gulf does not seek to delay any future proceedings or require reconsideration of phases of litigation already concluded. *See, e.g.*, *Wal-Mart Stores*, 834 F.3d at 565–66 (finding motion to intervene timely when it was filed "before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded"). Accordingly, there is no additional prejudice to the existing parties caused by Healthy Gulf's intervention now, as opposed to earlier in the case; indeed Healthy Gulf's intervention in-and-of-itself also will not prejudice the additional parties for the same reason. *See John Doe No. 1 v. Glickman*, 256 F.3d 371, 378 (5th Cir. 2001). Conversely, denying intervention would prejudice Healthy Gulf by denying it the opportunity to defend its and its members' interests, as detailed below, in protecting the Gulf of Mexico's

wildlife, ecosystems, fisheries, and communities from additional harm that would result if the Taylor Energy oil spill is allowed to continue.  Healthy Gulf's motion, therefore, is timely.[2]

### B. Healthy Gulf and Its Members Have Legally Protected Interests at Stake.

Rule 24(a) requires an applicant for intervention to possess an interest relating to the property or transaction that is the subject matter of the litigation.  Fed. R. Civ. P. 24(a)(2).  This requirement is not rigid.  Rather, "[t]he 'interest' test is primarily . . . a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Wal-Mart Stores*, 834 F.3d at 566 n.2 (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)); *see also Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) ("The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." (quoting 6 James Wm. Moore, *et al.*, Moore's Federal Practice § 24.03[2][c], at 24–34)).  An interest is sufficient for purposes of Rule 24 if it is "legally protectable" — that is, "if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim."  *Wal–Mart Stores*, 834 F.3d at 566 (quoting *Texas*, 805 F.3d at 659); *see also Diamond v. Charles*, 476 U.S. 54, 75 (1986).

Healthy Gulf and its members have cognizable recreational, aesthetic, and research interests in the Gulf of Mexico and its wildlife, ecosystems, and fisheries.  Eustis Decl. ¶¶ 2, 4, 10–22.  It is well-established that these types of interests are legally protectable.  *E.g.*, *Gulf Restoration Network, Inc. v. Salazar*, 683 F.3d 158, 167 (5th Cir. 2012).  Healthy Gulf's members also have legally protectable interests in consuming oil-free seafood caught off the Louisiana Coast.  Eustis Decl. ¶ 17; *see, e.g.*, *Envtl. Def. Fund, Inc. v. Hardin*, 428 F.2d 1093,

---

[2] There are no unusual circumstances regarding Healthy Gulf's motion in this case.

1097 (D.C. Cir. 1970) (finding group's members had cognizable interest in consuming food without pesticide residues). These interests are sufficient for intervention as of right in this case.

### C. If Successful, Taylor Energy's Action Would Impair Healthy Gulf's Interests.

An applicant for intervention as of right must be "so situated that the disposition of the action *may* as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). "[A] would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." *Brumfield*, 749 F.3d at 345 n.2 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)).

If Taylor Energy prevails in this case, the efforts by the Coast Guard and its contractor to contain and stop the ongoing oil spill would be halted. *See* Compl. ¶ 94. Plaintiff has asked this Court to vacate the Coast Guard's administrative order as well as all actions and findings made pursuant to that order, and to enter injunctive relief against Defendants. *Id.* If such relief is granted, oil would continue to stream from the Taylor Energy site into the Gulf and cause harm to the wildlife, ecosystems, and fisheries in which Healthy Gulf and its members have interests. *See* Eustis Decl. ¶ 17–18. There is no indication that any other efforts would be undertaken by Taylor Energy, the federal government, or any other entity to contain and stop the spill if the Coast Guard's actions were enjoined. The past fourteen years of relative inaction on-the-ground to cap the spill indicate new efforts are unlikely. Even if such future remediation were reasonably foreseeable, the possibility that harm to Healthy Gulf's interests will not come to fruition does not negate the showing that the action *may* impair those interests. *See In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 251 (5th Cir. 2009). And, in any case, the Taylor Energy oil spill would still continue to harm Healthy Gulf's interests in the interim between an injunction

9

against the Coast Guard's order and any future containment efforts. Because disposition of this action *may*, as a practical matter, impair Healthy Gulf's ability to protect its interests in a clean Gulf ecosystem, Healthy Gulf satisfies Rule 24(a)'s impairment-of-interest requirement. Indeed, another judge in this District previously found that similar interests of local environmental organizations and their members in a clean Gulf of Mexico would be harmed if the Taylor Energy spill were not stopped. *Riverkeeper v. Taylor Energy Co., LLC*, 113 F. Supp. 3d 870, 879 (E.D. La. 2015).

### D. Healthy Gulf's Interests May Not Be Adequately Represented by the Existing Parties.

Finally, an applicant for intervention as of right must show that its interests may not be adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a). This burden is "minimal." *Espy*, 18 F.3d at 1207 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). "The movant need not show that the representation by existing parties will be, for certain, inadequate." *Brumfield*, 749 F.3d at 345 (quoting 6 James Wm. Moore, *et al*., Moore's Federal Practice § 24.03[4][a], at 24–27); *see also Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[A] movant 'ordinarily should be allowed to intervene unless it is *clear* that the [existing] party will provide adequate representation.'" (emphasis added) (quoting *U.S. v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)). Rather, "[b]ecause intervention necessarily occurs before the litigation has been resolved, [an applicant for intervention] need only show that 'the representation *may* be inadequate.'" *Wal–Mart Stores*, 834 F.3d at 569 (quoting *Texas*, 805 F.3d at 662).

Representation of Healthy Gulf's interests in this case by the existing parties may, at the very least, be inadequate.[3]

There are two situations in which adequate representation is initially presumed, but can be straightforwardly rebutted by the prospective intervenor. *Brumfield*, 749 F.3d at 345. The first — "where one party is a representative of the absentee by law" — does not apply here because the Coast Guard "is a governmental agency and not a sovereign interest." *Entergy*, 817 F.3d at 203 & n.2 (quoting *Brumfield*, 749 F.3d at 345). The second situation "arises when 'the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Id*. at 203 (quoting *Brumfield*, 749 F.3d at 345). A prospective intervenor can overcome either presumption if it shows that its "interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662.

Although the government and Healthy Gulf presumably share one of the primary objectives in this lawsuit — denial of Taylor Energy's request to vacate the Coast Guard's administrative actions, *see* Compl. ¶ 87–90 — the *ultimate* objectives of the two parties may differ. The government's ultimate objective presumably includes both defending its actions *and* requiring Taylor Energy, not the government, to pay for the containment. *See* Compl. ¶¶ 76, 94 (requesting "injunctive relief" for alleged deprivation of Taylor Energy's property right in its "financial responsibility . . . for activities undertaken at the [Taylor Energy] site"); Notice of Federal Assumption, ECF No. 1-4 (Coast Guard stating its actions do not relieve Taylor Energy

---

[3] Taylor Energy plainly cannot adequately represent Healthy Gulf's interests because it seeks to vacate and enjoin the very action that Healthy Gulf seeks to defend. Couvillion is not a party to the case in which Healthy Gulf seeks to intervene (No. 18-14046), so is not an "existing party." Even if it were, Couvillion's interests in this case involve its economic liability and its contractual relationship with the Coast Guard, *see* Mem. Support Couvillion Mot. Dismiss 2, 16–22, ECF No. 27-1; it is not representing the types of recreational, aesthetic, and research interests held by Healthy Gulf and its members.

of its financial responsibility). Healthy Gulf's ultimate objective, on the other hand, is focused on ensuring the containment efforts initiated by the Coast Guard's administrative actions are promptly implemented and carried out, regardless which entity is financially responsible. Moreover, even the shared objective of defending against vacatur of the Coast Guard's actions is not assured at this point. *Cf., e.g.*, *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) ("[A] shared general agreement [between intervenors and the agency] that the [agency action] should be lawful does not necessarily ensure agreement in all particular respects about what the law requires."); *Am. Great Lakes Ports Ass'n v. Zukunft*, No. CV 16-1019 (RC), 2016 WL 8608457, at *4 (D.D.C. Aug. 26, 2016) (finding prospective-intervenor's interests may not be adequately represented because government might decide to settle with plaintiff).

Even if Healthy Gulf and the Coast Guard did have the same ultimate objectives, the Coast Guard cannot adequately represent Healthy Gulf because Healthy Gulf's interests diverge from the government's interests in several respects that could affect this litigation. *Texas*, 805 F.3d at 662–63 (explaining standard is met when an applicant for intervention "specif[ies] the particular way in which [its] interests diverge from the Government's" and "identif[ies] the particular way in which these divergent interests . . . impact[] the litigation"). Foremost is that the government must represent the "broad public interest" irrespective of Healthy Gulf's more discrete and particularized interests. *Espy*, 18 F.3d at 1208; *see Abita Springs v. U.S. Army Corps of Eng'rs*, No. CV 15-0451, 2015 WL 13533518, at * 3 (E.D. La. Sept. 25, 2015) ("[T]he Fifth Circuit has found that a government defendant does not adequately represent the interest of a private entity, even if they seek the same ultimate outcome." (citing cases)); *see also Wal–Mart Stores*, 834 F.3d at 569 n.9 (collecting cases); *John Doe No. 1*, 256 F.3d at 381 (finding

government agency may not adequately represent interests of public interest animal welfare organization "given . . . [the agency's] duty to represent the broad public interest").

More specifically, Healthy Gulf's and the government's interests diverge in that Healthy Gulf is primarily interested in *swift* containment of the ongoing Taylor Energy oil spill, whereas the government is interested in eventual containment. *Cf. Entergy*, 817 F.3d at 204 (finding adversity of interests because "Sierra Club claims it is interested in prompt disclosure of the requested documents, while EPA is interested only in eventual disclosure"). Healthy Gulf has actively advocated for immediate containment of the spill since 2011. Eustis Decl. ¶¶ 6–8. The Coast Guard to date has largely ignored those pleas, and only took the action towards containment at issue in this suit several years later in October 2018. The government has not evidenced an interest in the same sense of urgency that Healthy Gulf believes is required to contain and plug the Taylor Energy oil spill.

The government also has interests imposed by its regulations that are not shared with Healthy Gulf. For instance, the Coast Guard has an interest in coordinating its response efforts with "other appropriate federal, state, local, and private response agencies." 40 C.F.R. § 300.135(d). The Coast Guard also has an interest in making "continuing efforts . . . to encourage response by responsible parties" "[w]here practicable," rather than taking immediate response actions itself. *Id.* § 300.305(d). Serving any of these interests can slow or delay the response effort, in direct opposition to Healthy Gulf's interest in immediate containment. The government also has an interest in preserving broad discretion to decide when and how to take action in response to an oil spill. Healthy Gulf, on the other hand, has an interest in ensuring that

13

the government exercises any discretion to take quicker, effective action to control a spill than it has to date in this case.[4]

The impact of this divergence of interests could manifest itself in this litigation either in a procedural manner or in the substantive arguments. For example, the Coast Guard may agree to — or at least not oppose — staying implementation of the challenged order pending the outcome of this case because doing so arguably would not undermine its interest in eventually containing the oil spill. *Cf. Entergy*, 817 F.3d at 204 (noting divergent positions on staying case). The Coast Guard also may make different legal arguments than Healthy Gulf in terms of the scope of the agency's authority. *Cf. Wal–Mart Stores*, 834 F.3d at 569 (noting differences in scope of legal arguments parties could make); *Brumfield*, 749 F.3d at 346 (same). Healthy Gulf is not required to show that these possible impacts *will* occur in order to satisfy the intervention requirements; it is enough that representation *may* be inadequate. *Brumfield*, 749 F.3d at 345–46 ("We cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires."); *see Wal–Mart Stores*, 834 F.3d at 569 (noting "intervention necessarily occurs before the litigation has been resolved" and actual adequacy of representation can be determined).[5] Accordingly, intervention is

---

[4] These are not hypothetical differences. The government's and Healthy Gulf's divergent interests in oil and gas-related activities have manifested in multiple other areas related to oil and gas development, where Healthy Gulf has had to sue the government to protect the its members' interests. *E.g.*, *Gulf Restoration Network v. Bernhardt*, No. 1:19-cv-00707 (D.D.C. filed Mar. 13, 2019); *Gulf Restoration Network v. Bernhardt*, No. 1:18-cv-01674 (D.D.C. filed July 16, 2018); *Gulf Restoration Network v. Nat'l Marine Fisheries Serv.*, No. 8:18-cv-01504-JDW-AEP (M.D. Fla. filed June 21, 2018).

[5] The District Court for the District of Columbia persuasively explained why this standard makes sense:

> Requiring [the applicant] to monitor the DOJ's litigation posture from the sidelines until [the applicant] disagrees with a decision by the agency is inefficient and impractical; indeed, [the applicant] likely would have limited, if any, insight into the DOJ's strategy during the litigation, and once [the applicant] did learn of

appropriate here because Healthy Gulf's interests diverge from those of the Coast Guard in a manner germane to this case. Healthy Gulf's interests in this case will not, and at least may not, be adequately represented by the existing parties.

## II. Alternatively, the Court Should Permit Healthy Gulf to Intervene Permissively.

If the Court denies intervention as of right, Healthy Gulf requests the Court to grant permissive intervention under Federal Rule of Civil Procedure 24(b). Permissive intervention "is appropriate when the intervention request is timely, the intervenor's 'claim or defense and the main action have a question of law or fact in common,' and granting intervention will not unduly delay or prejudice the original parties in the case." *United States v. City of New Orleans*, 540 F. App'x 380, 381 (5th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)). Upon finding that permissive intervention is appropriate, "district courts have 'broad discretion' in allowing intervention." *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, 179 F. Supp. 3d 656, 667 (E.D. La. 2016) (citation omitted). Healthy Gulf satisfies Rule 24(b)'s requirements, and requests the Court to exercise its discretion to permit intervention.

Healthy Gulf's motion is timely, as demonstrated above: the case is at a preliminary stage, and no merits briefing has yet occurred. Healthy Gulf's defense also shares questions of law and fact with Taylor Energy's main action against the Coast Guard; for example, the legal authority for the Coast Guard to take the actions challenged in this case. Intervention by Healthy

---

a hypothetical shift in the DOJ's position, such as a decision to release a specific category of materials, it might be too late for [the applicant] to undue any damage done. . . . It also might be too late for [the applicant] to intervene at all, as both Rule 24(a) and Rule 24(b) require a timely motion to intervene.

*100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 280 & n.2 (D.D.C. 2014); *cf. Amador Cty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 905 (D.C. Cir. 2014) (denying intervention as untimely when party waited to file motion until "its suspicion of inadequate representation became a reality").

Gulf would not delay this case or prejudice the existing parties. This motion is being filed before any proceedings in the Coast Guard litigation have been scheduled, and Healthy Gulf, if granted intervention, intends to follow any briefing schedules set by the parties and to support the efficient adjudication of this case.

Given that it has met the minimum standards for permissive intervention, Healthy Gulf requests the Court exercise its discretion to grant intervention in the interest of ensuring that the Court is presented with a key perspective on the issues involved in this case that may aid the Court's review. *See, e.g.*, *Costle*, 561 F.2d at 912–13 (granting intervention in part because intervenor "may also be likely to serve as a vigorous and helpful supplement to EPA's defense"); *see also* 7C Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1913 (3d ed. 2018) ("A finding by the court that the presence of the intervenor will not prejudice the original parties serves to encourage the court to exercise its discretion to allow intervention."). Healthy Gulf was one of the first organizations to identify the occurrence of the Taylor Energy oil spill and bring public attention to the matter. Eustis Decl. ¶ 6. It has conducted monitoring trips and researched impacts of the spill to the environment in the years since. *Id.* ¶¶ 8–10. Healthy Gulf's expertise and familiarity with the effects the Taylor Energy spill is having on the Gulf and the need to take immediate action to contain the spill will assist the Court in understanding the validity of the basis for the Coast Guard's actions, *see, e.g.*, Compl. ¶ 47–48, 78–79, 84 (challenging Coast Guard's finding that the spill poses a serious threat of harm to the Gulf environment), and will present the perspective of communities suffering from the spill.

Healthy Gulf's intervention is timely, shares questions of law and fact with the instant case, and will not cause undue delay or prejudice the existing parties. The organization brings a

unique and helpful perspective to this case regarding the urgent need for federal action to contain the Taylor Energy oil spill, so accordingly requests this Court to grant permissive intervention.

## **CONCLUSION**

For the above reasons, Healthy Gulf respectfully asks this Court to grant it intervention as of right, or, in the alternative, by permission, to protect its and its members' interests in prompt remediation of the ongoing Taylor Energy oil spill.

Dated this 15th day of March, 2019.

> EARTHJUSTICE
>
> *s/* Michael L. Brown
> Michael L. Brown (L.A. Bar #35444)
> 1434 N. Roman Street
> New Orleans, LA 70116
> T: 415.217.2000, ext. 2042
> F: 415.217.2040
> mlbrown@earthjustice.org
>
> *Attorney for Applicant-Intervenor-Defendant Healthy Gulf*