**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| TAYLOR ENERGY COMPANY LLC, | ) | CIVIL ACTION |
| | ) | |
| | ) No.: | 18-14046 c/w |
| Plaintiff, | ) | 18-14051 |
| | ) | |
| v. | ) Refers to: | 18-14046 |
| | ) | |
| CAPTAIN KRISTI M. LUTTRELL, et al., | ) Section: | B(5) |
| | ) | |
| Defendants, | ) Judge: | Hon. Ivan L. R. Lemelle |
| | ) | |
| HEALTHY GULF, | ) Magistrate: | Hon. Michael North |
| | ) | |
| Applicant-Intervenor-Defendant. | ) | |

**REPLY IN SUPPORT OF HEALTHY GULF'S MOTION TO INTERVENE**

Healthy Gulf seeks to intervene as a defendant to protect its own and its members scientific, aesthetic, and consumer interests in the Gulf of Mexico and its wildlife that are directly threatened by the ongoing oil spill from the Taylor Energy Company LLC ("Taylor") site at Mississippi Canyon Block 20 ("MC-20"). Taylor has not provided any legitimate reason to deny intervention in its opposition. "Given the broad policy favoring intervention in [Fifth Circuit] precedent," the Court should grant Healthy Gulf's motion for intervention. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016).

**I.      Healthy Gulf's Motion is Timely.**

Healthy Gulf filed its motion at the early stages of litigation, before the Coast Guard entered an answer and before any party filed substantive legal pleadings. In short, nothing of any substance happened before Healthy Gulf moved to intervene. *See* Healthy Gulf Mem. 6-7, ECF No. 54-1 (citing cases). This set of circumstances contrasts starkly with those in *Frazer v. Map Oil Tools, Inc.*, Civ. No. C-10-4, 2010 WL 2352056 (S.D. Tex. June 10, 2010), the case Taylor

1

invokes in its opposition.  Taylor Opp'n, 15, ECF No. 90.  In *Frazier*, the court denied an applicant's attempt to intervene more than three months into a "rocket docket" patent case with a one-year scheduling order, after numerous deadlines for substantive pleadings affecting the parties' preparation of claims and defenses had already passed.  *Id*. at *5.  In contrast, the proceedings here are not expedited, and no substantive motions had been filed.

Taylor has failed to demonstrate that Healthy Gulf's three-month alleged "delay" in moving to intervene would cause any prejudice.  At most, Taylor contends that allowing Healthy Gulf to intervene would cause Taylor to "take significant time to evaluate new information and positions by Healthy Gulf."  Taylor Opp'n 15.  But prejudice cannot be measured by "the inconvenience of existing parties of allowing the intervenor to participate in the litigation." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994).  Otherwise, intervention would always result in some prejudice and no party would be allowed to intervene.

## II. Healthy Gulf and Its Members Have Legally Protected Interests at Stake that Would Be Impaired if Taylor Energy Is Successful.

Healthy Gulf and its members have concrete, legally protectable interests in their use and enjoyment of the Gulf of Mexico and its wildlife, ecosystems, and fisheries. Environmental interests in protecting wildlife, like those of Healthy Gulf, are legally protectable even in the more stringent context of standing.  Health Gulf Mem. 8-9 (citing cases).  The large and uncontrolled oil discharge from the MC-20 site, which Healthy Gulf has monitored and advocated to contain for nearly a decade, directly harms those interests.  Eustis Decl. ¶¶ 6-19, ECF No. 54-3.  Should Taylor prevail in vacating or enjoining the Coast Guard's Administrative Orders, and halting containment of the oil spill at the MC-20 site, Healthy Gulf's interests will be harmed directly by the continued outpouring of oil into the coastal Gulf ecosystem.  *Id*.

Healthy Gulf has demonstrated that its interests meet the test for intervention here. The "touchstone" for courts in the Fifth Circuit of the inquiry is whether an applicant's interest is "legally protectable." *Wal-Mart*, 834 F.3d at 566 (citations omitted). Numerous courts have conclusively determined that environmental interests in protecting healthy wildlife, like those of Healthy Gulf and its members, are concrete, legally protectable interests. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562-63 (1992) ("[T]he desire to use or observe an animal species, even for purely esthetic purposes, is *undeniably* a cognizable interest . . . ." (emphasis added)); *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) ("[I]t [is] '*indisputable*' that a prospective intervenor's environmental concern is a legally protectable interest." (emphasis added)). Moreover, this Circuit has already found that Healthy Gulf and its members have legally protectable, "cognizable" interests in the Gulf, its wildlife, coasts, and beaches in the context of whether Healthy Gulf could meet the higher bar for Article III standing. *Gulf Restoration Network, Inc. v. Salazar*, 683 F.3d 158, 167 (5th Cir. 2012). "A movant who shows standing is deemed to have a sufficiently substantial interest to intervene." *Wal-Mart*, 834 F.3d at 566 n.3 (quoting *LULAC v. City of Boerne*, 659 F.3d 421, 434 n.17 (5th Cir. 2011)).

Healthy Gulf's interests are not collateral, but rather directly relate to the Administrative Orders at issue in this case.[1] The Coast Guard issued those orders under the authority of the Oil

---

[1] Taylor's reference to the real party in interest requirements of Federal Rule of Civil Procedure 17(a) is misplaced. Taylor Opp'n 5. Those requirements apply primarily to parties seeking to intervene as plaintiffs or to bring a separate claim in intervention in private disputes. *Wal-Mart*, 834 F.3d at 568; *see, e.g.*, *Ross v. Marshall*, 426 F.3d 745, 757-60 (5th Cir. 2005) (discussing whether private insurer could intervene on behalf of the insured to appeal judgment); *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984) (describing "requirement that the claim the applicant seeks intervention in order to assert be a claim as to which the applicant is the real party in interest"). Even if applicable, Healthy Gulf meets the standard because Taylor's efforts to halt containment efforts would directly impact the interests of Healthy Gulf and its members.

3

Pollution Act of 1990. *See, e.g.*, ECF No. 1-3. As noted in those orders, the discharge of oil at the MC-20 site poses a "substantial threat" to the waters of the Gulf and adjoining shorelines, and the Coast Guard ordered the institution of a containment system to address that threat. *Id*. If Taylor successfully overturns or enjoins those orders, oil from the MC-20 site will continue to threaten the Gulf and its resources, directly injuring Healthy Gulf's interests in the Gulf's ecosystems, wildlife, and other resources.[2] *See* Eustis Decl. ¶ 17-22.

The Tenth Circuit cases that Taylor cite have no bearing here. In *Ute Distribution Corp. v. Norton*, the applicant sought to transform an Administrative Procedure Act challenge into a quiet title action by raising wholly collateral claims. 43 Fed. App'x 272, 278-89 (10th Cir. 2002). Healthy Gulf does not intend to raise new collateral claims or defenses here. Nor is Healthy Gulf seeking to protect a collateral interest, like the ability to offer extraneous evidence. *Cf. Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 90-91 (10th Cir. 1993) (holding that the collateral opportunity to offer extraneous evidence was not a protectable interest for intervention). Instead, consistent with the Fifth Circuit's holding in *Wal-Mart*, Healthy Gulf and its members are direct beneficiaries of the Coast Guard's Administrative Orders. *See Wal-Mart*, 834 F.3d at 566-67 (finding that "'public spirited' civic organizations that successfully petition for adoption of a law" are intended beneficiaries of that law and "may intervene to vindicate their

---

[2] The cases Taylor invokes in its opposition to argue that Healthy Gulf's harms are speculative or conclusory are inapposite. Taylor Opp'n 6-7. The harms here do not depend on a long sequence of speculative future events or require the Court to make unrealistic inferences, nor are they improperly attenuated. *Cf. Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 947 (7th Cir. 2000) (denying intervention when potential harms of competition depended on a series of unrelated future events); *Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 67-69 (D.D.C. 2004) (rejecting intervention when applicant could not show the harms to its interests were a real possibility); *Laube v. Campbell*, 215 F.R.D. 655, 657-58 (M.D. Ala. 2003) (rejecting speculative interest that required a "long sequence" of collateral, future events to occur). Elimination of the orders here would immediately stop containment of oil and result in direct, unattenuated harms. *See* Taylor Opp'n 13-14 (explaining containment of oil would be delayed if Taylor prevailed).

'particular interest' in protecting that law." (quoting *City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012)). Having long advocated for action that would ensure containment of the oil discharge at the MC-20 site to protect its and its members' interests, Healthy Gulf has a direct, legally protected interest in defending those orders.

Further, Healthy Gulf's interest in protecting the Gulf environment will be directly impaired if Taylor successfully enjoins containment efforts at the site.[3] Taylor's assertion that oil releases from the MC-20 site are not causing harm to Gulf wildlife or ecosystems is simply untrue. Recent studies demonstrate that the spill has been discharging at least ~10,000 gallons (249 barrels) of oil *every day* for the last fourteen years. *See* Compl. ¶ 46, ECF No. 1. This Court need not look far to find decisions demonstrating that large oil spills cause widespread environmental harm. *See, e.g.*, *In re. Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Nos. 10-4536, 10-04182, 10-03059, 13-4677, 13-158, 13-00123, 2016 WL 1394949, at *1, 3, 10-13 (E.D. La. April 4, 2016). More importantly, Taylor's arguments to the contrary confuse the merits of this case with whether Healthy Gulf has the right to intervene. *Cf., e.g.*, *Markle Interests, LLC v. U.S. Fish & Wildlife Serv.*, Civ. Nos. 13-0234 c/w 13-0362, 13-0413-MLCF-SS, 2013 WL 12247766, at *1-2 (E.D. La. June 25, 2013) (granting Healthy Gulf intervention and rejecting factual arguments that should be decided on the merits). This Court has already rejected Taylor's attempts to downplay the harms of oil from the MC-20 site in the context of standing. *Apalachicola Riverkeeper v. Taylor Energy Co. LLC*, Civ. No. 12-337, 2013 WL 1897142, at *3-7 (E.D. La. May 4, 2013). The Court also rejected

---

[3] To clarify, Scott Eustis' statements in his declaration mean that destructive impacts to sea turtles *both* have occurred in the past and are continuing to occur in the future, simultaneously. Eustis Decl. §§ 18-19. It is unclear why Taylor finds it confusing that the unabated and long-standing release of oil into coastal Gulf waters could cause harm both in the past and into the future. *See* Taylor Opp'n 7.

Taylor's arguments that conservation group members must allege interests at the MC-20 site, as opposed to in other areas of the Gulf that may be affected by the spill.  *Id.*  This case is no different, aside from involving a more lenient legal standard for intervention than for standing.  Healthy Gulf has met its burden to show that its interests may be impaired or that harm is possible if intervention is denied.  Healthy Gulf Mem. 9.

**III.     The Coast Guard May Not Adequately Represent Healthy Gulf's Interests.**

Healthy Gulf has met its burden to show that its interests *may* not be adequately represented.  *See* Healthy Gulf Mem. 10 (citing cases).  A presumption of adequate representation does not apply here because the Coast Guard seeks a different ultimate outcome in this case than Healthy Gulf.  *Id*. at 11-12; *see also Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014) (finding that "it [was] *not* evident that the ultimate-objective presumption applie[d] because [the government] ha[d] more extensive interests to balance than [did] the applicant intervenor" (emphasis added)).  Even if the ultimate-outcome presumption applies, as Taylor contends, Healthy Gulf overcomes that presumption because the parties' interests diverge in ways that are germane to this case.

Healthy Gulf has "specif[ied] the particular ways in which [its] interests diverge from the Government's."  *Texas v. United States*, 805 F.3d 653, 663 (5th Cir. 2015).  Mr. Eustis' declaration, details Healthy Gulf's nearly decade-long effort to advance its interest in promptly stopping the flow of oil into the Gulf of Mexico from the Taylor site.  Eustis Decl. ¶¶ 6-8.  Its primary interest in this case is ensuring the immediate containment of oil to protect the environment irrespective of who pays or the cost of containment.  *Id*. ¶ 20.  While the Coast Guard shares an interest in ensuring that its current orders are carried out and oil is contained, it also has a number of other obligations, responsibilities, and concerns that diverge from Healthy Gulf's.  For example, although both parties seek to uphold the Administrative Orders, the Coast

6

Guard also seeks to ensure that Taylor, and not the government, remains financially responsible for payments associated with the Orders. *See* Healthy Gulf Mem. 11-12.[4] Taylor has not pointed to any evidence that demonstrates otherwise. The Coast Guard also has interests in cooperating with other parties and maintaining its discretion in carrying out its orders and interpreting its authority. *Id*. at 12-14. These broader additional interests diverge from Healthy Gulf's singular focus on swift and effective containment to protect the environment at all costs. *Texas*, 805 F.3d at 663; *Brumfield*, 749 F.3d at 346; *see also Ouachita Riverkeeper v. EPA*, Civ. No. 3:14-CV-4495-L-BK, 2015 WL 11120995, at *2 (N.D. Tex. June 15, 2015) ("[T]he Court of Appeals for the Fifth Circuit has found ultimate objectives to be incongruent when one party must balance more extensive interest than the applicant." (citing *Brumfield*, 749 F.3d at 346)).

Those divergent interests are germane to the litigation. For example, the Coast Guard will likely emphasize its discretion in overseeing containment to wait for the responsible party to act, to define the meaning of effective containment, and to otherwise direct response efforts. In fact, the Coast Guard has already started to stake out such a position in its motion to dismiss in this case, arguing that the agency has broad "discretion" to allow the responsible party to voluntarily perform removal actions and to determine the proper course of response. Coast Guard Mot. Dismiss 18-19, ECF No. 61-1. While the Coast Guard will likely seek to defend its actions to date as a reasonable exercise of this discretion, Healthy Gulf will emphasize the Coast Guard's paramount duty to ensure swift and effective clean up and that its discretion to

---

[4] The fact that the Coast Guard currently intends to defend its Orders does not demonstrate adequacy of representation. The relevant question is whether an existing party will represent an applicant's specific *interests*, not whether parties share the same general *goal* in upholding an agency action. *See Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001) Indeed, if a shared goal of upholding a challenged agency action were sufficient to deny intervention, it is difficult to understand how any intervenor would be permitted to intervene in a challenge to a government decision that benefits its interests.

determine how that is accomplished is constrained by this substantive duty. The Coast Guard's position that it has broad discretion to weigh many different factors as it directs and controls response efforts is directly adverse to Healthy Gulf's interests. Indeed, for fourteen years after the spill started, the Coast Guard exercised this discretion by deciding not to commence prompt containment after the oil spill started – in direct opposition to Healthy Gulf's interests and advocacy. This "lack of unity in all objectives, combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate that representation *may* be inadequate." *Texas*, 805 F.3d at 663; *accord Brumfield*, 749 F.3d at 346. Similarly, should this Court find fault with the Administrative Orders on the merits, the Coast Guard may not seek to leave the orders in place pending any remand or even may seek to settle with Taylor to secure payment and containment of some portion of the spill. Given the Coast Guard's multiple interests – including its interest in ensuring that Taylor pays for containment – such an outcome is not speculative, as Taylor contends.

Further, the Coast Guard spent years ignoring Healthy Gulf's pleas to take action to contain the oil at the Taylor spill site. Healthy Gulf Mem. 13. It is only in the past six months that the Coast Guard has finally acted to contain the leak. Where the Coast Guard has substantially shifted its position over time, there is a good chance it may not strongly continue to defend this particular action. *See, e.g.*, *Texas*, 805 F.3d at 663-64; *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998) (finding inadequacy of representation in part because "it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts").

The cases Taylor cites in its opposition are distinguishable. Taylor Opp'n 9-14. For example, in *Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994), the applicant only argued at a "high

8

level of generality" that the state's interests were broader, and did not demonstrate any concrete legal impacts. *Texas*, 805 F.3d at 662 (distinguishing *Hopwood*). Here, Healthy Gulf has identified discrete, particularized interests the Coast Guard must balance and which Healthy Gulf does not share, and how those differences may manifest in litigation. In *Akins v. Worley Catastrophe Response, LLC*, the court denied intervention for two individual applicants in a class action lawsuit for unpaid overtime wages because the applicants' arguments "boil[ed] down to their counsel's desire to give legal advice to members of the [] class . . . that may differ from the advice that the intervenors speculate the [] plaintiffs' attorneys will provide to the class action members." Civ. No. 12-2401, 2013 WL 796095 at *6 (E.D. La. March 4, 2013). Here, Healthy Gulf has identified concrete differences that would affect substantive aspects of the litigation, not mere tactical disagreements. In *Habitat Education Center., Inc. v. Bosworth*, an out-of-circuit district court case, the Forest Service and the applicants shared the same narrow objective of upholding a timber sale, and had "similar if not identical" broader goals in implementing a multiple use policy. 221 F.R.D. 488, 495 (E.D. Wis. 2004). Here, in contrast, Healthy Gulf has demonstrated substantial divergences in interest with the Coast Guard, both specifically in the context of the parties' reactions to the Taylor spill and more generally. Finally, Taylor mischaracterizes the holding in *Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984). The court held that adversity of interests that may manifest in a *future case* was not enough to support intervention – it did not hold that divergences that may manifest at a future time in the *current case* are insufficient. *Id.* at 356-57. Healthy Gulf has shown how its interests *may* not be adequately represented in this litigation, and that is sufficient to support intervention here. *See Brumfield*, 749 F.3d at 346 ("We cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all the rule requires.").

**IV.     Alternatively, the Court Should Permit Healthy Gulf to Intervene Permissively.**

Even if the Court denies Healthy Gulf intervention as of right, it should exercise its broad discretion to grant permissive intervention. *Hanover Insurance Co. v. Superior Labor Servs.*, 179 F. Supp. 3d 656, 668-69 (E.D. La. 2016); Healthy Gulf Mem. 15-16. Here again, *Habitat Education Center*, is not relevant. 221 F.R.D. at 495, 497. *Contra* Taylor Opp'n 17. The court denied permissive intervention because the applicants could not make a significant contribution outside the administrative record because the interests were so aligned. That is not the case here. And contrary to Taylor's statements, Healthy Gulf has demonstrated that it will contribute unique legal and factual arguments related to the harm from Taylor's ongoing discharge, the scope of the Coast Guard's duties and the proper remedy for any legal defects in the Administrative Orders. *Contra* Taylor Opp'n 17.

## CONCLUSION

Motions for intervention are "'to be liberally construed,' with 'doubts resolved in favor of the proposed intervenor.'" *Entergy*, 817 F.3d at 203 (citation omitted). For all of the reasons above and those detailed in Healthy Gulf's memorandum, the Court should grant Healthy Gulf's motion to intervene.

Respectfully submitted this 14th day of May, 2019.

EARTHJUSTICE
*s/* Brettny Hardy
Brettny Hardy (*pro hac vice*)
50 California St., Suite 500
San Francisco, CA 94111
415-217-2142
bhardy@earthjustice.org

Christopher D. Eaton (*pro hac vice*)
705 Second Ave., Suite 203
Seattle, WA 98104
206-343-7340
ceaton@earthjustice.org

Michael L. Brown (La. Bar #35444)
1434 N. Roman Street
New Orleans, LA 70116
T: 415.217.2000, ext. 2042
mlbrown@earthjustice.org

*Attorneys for Applicant-Intervenor-Defendant Healthy Gulf*