UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAYLOR ENERGY COMPANY LLC | CIVIL ACTION NO.<br>18-14046 C/W 18-14051 |
| VERSUS | |
| | MOTION PERTAINS TO: 18-14046 |
| CAPTAIN KRISTI M. LUTTRELL,<br>IN HER OFFICIAL CAPACITY AS<br>FEDERAL ON-SCENE COORDINATOR<br>FOR THE MC20 UNIFIED COMMAND, et al. | SECTION: B (5)<br><br>JUDGE: IVAN LEMELLE |
| | MAGISTRATE JUDGE:<br>MICHAEL NORTH |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BRIAN H. LYNK
  *Trial Attorney*
  U.S. Department of Justice
  Environment & Natural Resources Division
  Environmental Defense Section
  P.O. Box 7611
  Washington, D.C. 20044
  Street address: 601 D Street, NW, Suite 8000
  Washington, D.C. 20004
  (202) 514-6187
  brian.lynk@usdoj.gov

*Of Counsel:*
BRIAN JUDGE
  *Chief, Office of Claims and Litigation*
  United States Coast Guard
  Washington, D.C.

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

      A.      Statutory Background ..................................................................................................2

            1.      Clean Water Act..................................................................................................2

            2.      Oil Pollution Act ..................................................................................................3

            3.      Administrative Procedure Act..................................................................................................4

      B.      Factual Background ..................................................................................................4

      C.      Procedural History ..................................................................................................7

STANDARD OF REVIEW ..................................................................................................................8

ARGUMENT ..................................................................................................................9

I.      Judicial Review of the Oct. 2018 Administrative Order No Longer Can Provide Any Meaningful Relief..................................................................................................10

II.      Taylor No Longer Can Identify Any Plausible Injury from the November 2018 Notice of Partial Federal Assumption or the Remaining Unspecified "Actions." ..................................................................................................11

CONCLUSION ..................................................................................................................12

**INTRODUCTION**

Defendants Captain Kristi M. Luttrell, in her official capacity as Federal On-Scene Coordinator for the MC20 Unified Command, and the United States of America, acting by and through the United States Coast Guard, (collectively, the "Coast Guard" or "Federal Defendants") respectfully file this Memorandum of Points and Authorities in support of their Motion for Summary Judgment.

This action arose from the Coast Guard's October 23, 2018 administrative order ("Administrative Order 19-001" or "the Order") under the Clean Water Act requiring Plaintiff Taylor Energy Company LLC ("Taylor") to construct a containment system to capture and remove oil leaking from its wrecked offshore oil production facility. Taylor challenged the Order and "all actions taken thereunder," including the Coast Guard's November 16, 2018 notice of its decision to assume partial federal control of the response action (the "Notice of Federal Assumption" or "Notice"), as well as other unspecified "actions." *E.g.*, Complaint to Vacate Administrative Order and for Other Relief ("Compl."), Rec. Doc. 1 ¶¶ 85, 90. Taylor speculated that installing the containment system directed by the Order could cause an "environmental catastrophe." *Id.* ¶ 36. Further, it alleged that it remained financially responsible for cleanup activities notwithstanding the partial federal assumption of control. *Id.* ¶¶ 44 & n.6. Accordingly, Taylor sued to have the Order, the Notice, and the other unspecified Coast Guard actions declared ultra vires, vacated and set aside. *Id.* ¶¶ 85, 90, 92, 94.

Recent developments have rendered Taylor's entire Complaint moot. The containment system has been fully installed at the site and is actively collecting oil as designed. The "environmental catastrophe" Taylor predicted did not happen. The Coast Guard recently informed Taylor that it is developing plans for the routine operation and maintenance of the oil containment system and has invited Taylor to resume its full responsibilities at the site. *See*

1

Letter from Captain Luttrell to Taylor dated May 16, 2019 (Exhibit A); *see also* News Release, "Coast Guard deploys containment, collection system at Mississippi Canyon 20 site, 14-year oil spill contained" (May 16, 2019) (Exhibit B).

As a result of these developments, any further litigation of Taylor's Complaint would be purely academic. Even if Taylor prevails on the merits of its claims,[1] there is no remedy within the Court's power to grant that could provide any meaningful relief to Taylor. A judicial order vacating and setting aside the Order, the Notice, or some other "action" would not change the fact that the containment system is now in place. More importantly, at this stage Taylor faces no credible threat of any "harm" that would necessitate any available form of redress by the Court.[2] Accordingly, this lawsuit no longer presents a live case or controversy and the Court should issue a summary judgment dismissing the lawsuit as moot.

## BACKGROUND

### A. Statutory Background

#### 1. Clean Water Act

The Clean Water Act requires the President to "ensure effective and immediate removal of a discharge, and mitigation or prevention of a substantial threat of a discharge, of oil or a hazardous substance" into navigable waters and certain other areas. 33 U.S.C. § 1321(c)(1)(A). The President has broad authority to conduct or arrange for such a removal, direct a private party

---

[1] The bulk of Taylor's Complaint is jurisdictionally defective for additional reasons besides mootness, or fails to state a claim, but the Court need not reach those issues given that the complaint has become moot. *See* Memorandum of Points and Authorities in Supp. of Federal Defendants' Partial Motion to Dismiss, Rec. Doc. 61-1 (Mar. 22, 2019); Order entered April 18, 2019, Rec. Doc. 78 at 2 (denying the motion to dismiss without prejudice to reurging the same grounds as a basis for summary judgment).

[2] The Complaint does not seek money damages, and does not invoke any statutory provision waiving sovereign immunity for such relief.

to conduct the removal, or remove or destroy a vessel causing a discharge. *Id*. § 1321(c)(1)(B). For oil discharges within the coastal zone, the Coast Guard has delegated authority to designate an on-scene coordinator who oversees the response action. 40 C.F.R. §§ 300.105(c)(3), 300.120(a).

### 2. Oil Pollution Act

The Oil Pollution Act of 1990, which amended the Clean Water Act, was enacted in response to the Exxon Valdez oil spill. *United States v. Am. Commercial Lines, L.L.C.*, 875 F.3d 170, 173 (5th Cir. 2017). "It 'was intended to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry.'" *Id*. at 173-74 (citation omitted).

The Oil Pollution Act creates a strict-liability scheme for responsible parties to pay removal costs and damages associated with oil discharges from vessels and other facilities into navigable waters or adjoining shorelines. *Id*. at 174 (citation omitted); 33 U.S.C. § 2702(a). The "responsible party" in the case of an offshore facility is "the lessee or permittee of the area in which the facility is located or the holder of a right of use and easement . . . ." 33 U.S.C. § 2701(32)(C). For abandoned offshore facilities, the responsible parties are those entities that would have been responsible parties immediately before abandonment. *Id*. § 2701(32)(G). With respect to facilities on the Outer Continental Shelf, the statute further provides that "[n]otwithstanding the limitations established under [section 2704(a)] and the defenses of section 2703 . . . , all removal costs incurred by the United States Government . . . shall be borne by the owner or operator of such facility. . . ." *Id*. § 2704(c)(3).

### 3. Administrative Procedure Act

The Administrative Procedure Act authorizes the Court to review "final agency action for which there is no other adequate remedy in a court" and empowers it to "hold unlawful and set aside" such action in certain circumstances. 5 U.S.C. §§ 704, 706(2). It waives the United States' sovereign immunity only with respect to claims seeking "relief other than money damages." *Id.* § 702; *see King v. U.S. Dep't of Veteran Affairs*, 728 F.3d 410, 416 (5th Cir. 2013).

### B. Factual Background[3]

Taylor Energy was the lessee and operator of an oil production platform located approximately ten miles off the coast of Louisiana in an offshore lease area known as Mississippi Canyon, Block 20 ("MC20" or the "Facility"). Fact No. 1. In September 2004, the Facility was toppled by a subsea mudslide during Hurricane Ivan, causing oil to leak from the site. Fact No. 2. In June 2007, Taylor's lease for MC20 terminated. Fact No. 3. Under Department of Interior regulations, *see* 30 C.F.R. §§ 250.1700-.1717, Taylor was required to decommission the abandoned Facility (e.g., permanently plug all wells and remove all platforms) within one year. 30 C.F.R. § 250.1703; Fact No. 4. However, in light of difficulties accessing certain wells, the United States allowed Taylor to explore alternate decommissioning activities. *Id.*

---

[3] "Facts" recited below are taken from Federal Defendants' Statement of Undisputed Material Facts. They are supported by the following pleadings and exhibits: the portions of Taylor's Complaint that the Federal Defendants admitted in their Answer; the Coast Guard's letter to Taylor on May 16, 2019, including the Coast Guard's enclosed press release of the same date; and Taylor's responsive letter to the Coast Guard on May 24, 2019. *See* Complaint to Vacate Administrative Order and for Other Relief ("Compl."), Rec. Doc. 1 (Dec. 20, 2018); Answer of Federal Defendants ("Answer"), Rec. Doc. 102 (lodged May 10, 2019 and filed May 17, 2019); Exs. A and B, *infra*.

4

Taylor was designated the "responsible party" under the Oil Pollution Act for the oil leak from MC20.  Fact No. 5.  The Coast Guard established a Unified Command to monitor the MC20 site and to study, address and evaluate possible further actions to be taken related to the September 2004 incident, under the oversight of a Coast Guard Federal On-Scene Coordinator.  Fact No. 6.  Taylor has participated in the Unified Command and conducted other activities in response to the leaking oil, some arising out of Taylor's legal responsibilities as the former lease holder and some arising out of its legal obligations as the "responsible party."  Fact No. 7.  Despite past containment attempts, however, by 2018 oil was still leaking from MC20 at a rate of potentially hundreds of barrels per day, and a sheen was present on the ocean surface.  Fact No. 8.

In light of a growing body of scientific evidence of multiple, active leaks, and Taylor's lack of action to contain the oil being discharged, the Coast Guard issued Administrative Order No. 19-001 on October 23, 2018.  Fact No. 9.  The Administrative Order required Taylor to "institute a containment system to capture, contain, and remove oil."  Fact No. 10.  It also specified a process whereby potential contractors—including at least two chosen by Taylor—would present containment proposals for consideration at a Unified Command meeting.  Fact No. 11. Taylor sought administrative reconsideration of the Administrative Order the next day.  The Coast Guard denied reconsideration.  Fact No. 12.

Taylor did present two contractors' proposals.  However, the Coast Guard determined that a proposal by Couvillion Group, LLC ("Couvillion") was more technically credible and could be installed more quickly.  Fact No. 13.[4]  Taylor and Couvillion engaged in negotiations

---

[4] Taylor later admitted that it did not think either of its proposals would work. *See* Feb. 27, 2019 Hearing Transcript at 44:10-15 (Rec. Doc. 47).

5

over a potential contract, but ultimately Taylor could not meet the deadline set forth in the Administrative Order for entering into a contract.  Fact No. 14.  Concerned with further delay in light of the continued discharge of oil, on November 16, 2018, the Coast Guard issued a Notice of Federal Assumption stating that the Coast Guard was partially taking control of the response action and that Couvillion's containment system would be installed.  Fact No. 15.  The notice was accompanied by a memorandum explaining the Coast Guard's reasons for selecting Couvillion's proposal over Taylor's in more detail.  Compl. Ex. D.

On May 16, 2019, Captain Luttrell wrote Taylor to inform it that Couvillion had completed installation of its containment system at the MC-20 site, under the Coast Guard's oversight.  Fact No. 16.  After an evaluation period, the Coast Guard has determined that the system is functioning as designed and has significantly reduced the oil sheen expressed on the ocean's surface.  Fact No. 17.  To date, the system has captured over 30,000 gallons of crude oil emanating from the site.  Fact No. 18.  According to the Coast Guard's press release issued the same date as (and enclosed with) the letter, "[a]t this time the system is working and the once predominantly large surface sheen has been reduced to barely visible."  Fact No. 19.  The Coast Guard further announced, "[w]e will continue to monitor the containment system's performance and make necessary adjustments to maximize containment of the spill."  Fact No. 20.

Captain Luttrell's letter "encourage[s] TEC to re-join the Unified Command and voluntarily re-assume their full responsibilities as the Responsible Party for this incident, to include operations, maintenance, and funding of the containment system under my supervision as the FOSC."  Fact No. 21.  The letter concludes, "[i]f TEC will re-assume these responsibilities, notify me in writing by June 1, 2019, and I will work with you on a way forward in regards to maintaining the containment system."  Fact No. 22.  On May 24, 2019, Taylor replied to Captain

Luttrell's May 16, 2019 letter, confirming that it "wishes to continue as a member of Unified Command and as an active participant in the response." Fact No. 23.

### C. Procedural History

Taylor filed this lawsuit on December 20, 2018.[5] In Count I of the Complaint, Taylor alleges that the Federal Defendants have "completely deprived" Taylor of constitutionally-protected "property rights and interests" in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution and the Administrative Procedure Act, which the Federal Defendants deny. Compl. ¶¶ 76-77; Answer ¶¶ 76-77. In Counts II-IV of the Complaint, Taylor asks this Court to review, vacate, and declare unlawful three actions or categories of actions: (1) the October 23, 2018 Administrative Order; (2) the Coast Guard's November 16, 2018 decision to partially assume control of the response action and related selection of Couvillion to design and install the oil containment system; and (3) an undefined group of "all actions" the Coast Guard took "under" or "pursuant to" the October 23, 2018 Administrative Order. *E.g.*, Compl. ¶¶ 88-89, 92(B)-(C), 94. Taylor brought a separate lawsuit against Couvillion on December 20, 2018, alleging claims arising out of Couvillion's role as the Coast Guard's contractor at MC20. *Taylor Energy Co. LLC v. Couvillion Grp. LLC*, 18-14051 (E.D. La.). The cases were consolidated on January 14, 2019. Rec. Doc. 22.

The Federal Defendants moved to dismiss the Complaint against them under Federal Rules of Civil Procedure 12(b)(1) and (6) as to all claims other than the one for Administrative

---

[5] To date, Taylor has filed three additional lawsuits against the United States concerning its financial obligations in connection with MC20. Two of the three have been dismissed. *See Taylor Energy Co., LLC v. United States*, 1:18-cv-01949 (Fed. Cl.) (filed Dec. 20, 2018) (dismissed without prejudice by stipulation on Mar. 12, 2019); *Taylor Energy Co. LLC v. U.S. Dept. of Interior*, 2:18-cv-14065 (E.D. La.) (filed Dec. 20, 2018); *Taylor Energy Co., LLC v. United States*, 1:16-cv-00012 (Fed. Cl.) (filed Jan. 4, 2016) (dismissed for failure to state a claim, Apr. 9, 2019).

7

Procedure Act judicial review of the Order. *See* Federal Defendants' Partial Motion to Dismiss, Rec. Doc. 61 (Mar. 22, 2019). Specifically, Federal Defendants argued that: (1) Taylor's Count I should be dismissed under Rule 12(b)(6) because Taylor had failed to adequately state a claim for denial of procedural due process that could proceed independently from its claim for Administrative Procedure Act review of the Order; (2) Taylor lacked standing to challenge the Notice or the unspecified "actions taken under" the Order; and (3) those unspecified actions also were not "final agency actions" reviewable under the Administrative Procedure Act. *See id.* at 10-21. Couvillion also moved to dismiss the complaint filed against it on multiple grounds. Rec. Doc. 27.

On April 18, 2019, prior to the deadline for Taylor to respond to the Federal Defendants' motion, the Court entered an order denying both motions to dismiss pending the completion of "limited jurisdictional discovery," which Taylor had sought in connection with its complaint against Couvillion. *See* Rec. Doc. 78. The Court made clear that its denial was without prejudice, and that the Defendants in both cases could reurge their grounds for dismissal in a later summary judgment motion. *Id.* At the Court's direction, the parties met and conferred regarding jurisdictional discovery. Each party then submitted a memorandum or status report to the Court identifying substantial disagreements between Taylor and the Defendants regarding how to proceed. *See, e.g.*, Rec. Doc. 86.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute of material fact and judgment should be granted as a matter of law. Fed. R. Civ. P. 56(a). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

8

(1986); see also Fed. R. Civ. P. 56(c)(1). The court must view the facts and any permissible inferences drawn from them in a light most favorable to the opposing party. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

It is Taylor's burden to demonstrate that the Court has subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). That burden is a continuing one, as the "case-or-controversy" requirement of Article III of the Constitution must be satisfied at all stages of the litigation, not just at the outset. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). "The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Envt'l Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008) (internal quotation and citation omitted). "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents." *Id.* at 525.

## ARGUMENT

The mootness doctrine looks at the same elements that are necessary to establish Article III standing at the outset of a lawsuit: (1) an injury that is concrete, particularized, and actual or imminent, as well as a showing that the injury (2) is fairly traceable to the defendant's action and (3) is "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation and citation omitted). To evaluate mootness, the Court determines whether those elements are still satisfied at a later stage in the case, or alternatively whether they are no longer satisfied due to intervening changes in circumstances. *See, e.g. Envt'l Conservation Org.*, 529 F.3d at 524 ("Mootness is the doctrine of standing in a timeframe.") (internal quotation and citations omitted). In the latter scenario, the case no longer presents a live controversy for the Court to adjudicate and should be dismissed as moot.

Federal Defendants' motion to dismiss argued that Taylor's Complaint did not establish either a concrete injury or redressability with respect to the November 2018 notice of partial federal assumption or the unspecified "actions taken under" the October 2018 Order, but conceded that Taylor had standing to seek Administrative Procedure Act review of the Order itself. *See* Rec. Doc. 61-1 at 9. Circumstances have changed since then, however, and based on the material undisputed facts as they now exist, Taylor no longer can demonstrate a live case or controversy with respect to any portion of its Complaint.

## I. Judicial Review of the Oct. 2018 Administrative Order No Longer Can Provide Any Meaningful Relief.

Taylor originally sought a judgment from this Court vacating and setting aside the Administrative Order and declaring it arbitrary, capricious, an abuse of discretion, unlawful and in violation of constitutional due process. *See* Compl. ¶¶ 85, 90. That Order was limited, however, to directing tasks related to the planning and installation of an oil containment system at the MC20 site. *See* Compl. Ex. B at 1-2. That work has now been fully implemented, as the Coast Guard confirmed in its recent letter to Taylor. Fact No. 16; *see also* Facts Nos. 17-20.

At the time Taylor filed its Complaint, the containment system had not yet been installed, and Taylor predicted that the work could cause an "environmental catastrophe" for which it would be financially responsible despite the partial federal assumption of control. Compl. ¶¶ 36, 44 & n.6. Now, however, the perils Taylor alleged have gone from speculative at best to utterly implausible. The work required by the Order was implemented; the Coast Guard has confirmed that the containment system is fully installed and operating as designed; and there was no environmental catastrophe associated with that work.

"As the Supreme Court has noted, 'it is not enough that a dispute was very much alive when the suit was filed." Rather, "[Taylor] 'must continue to have a personal stake in the

10

outcome of the lawsuit.'" *Env'l Conservation Org.*, 529 F.3d at 527 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)). If it is no longer possible to grant any effective relief to remedy an alleged legal violation, then such a personal stake in the lawsuit no longer exists and it should be declared moot and dismissed. *See id.* Here, because the October 2018 Order has been determined fully implemented, a judicial decision setting the Order aside now would not "redress harm" to Taylor in any meaningful way. Therefore, Taylor no longer has a personal stake in litigating its claims for review of the Order. *Accord, e.g.*, *Aquifer Guardians in Urban Areas v. U.S. Fish & Wildlife Serv.*, 555 F. Supp. 2d 740, 742-45 (W.D. Tex. 2008) (lawsuit challenging a USFWS biological opinion under the Endangered Species Act and Administrative Procedure Act became moot once the transmission line project that was the subject of the opinion had been completed).

## II. Taylor No Longer Can Identify Any Plausible Injury from the November 2018 Notice of Partial Federal Assumption or the Remaining Unspecified "Actions."

As noted above, Federal Defendants dispute whether Taylor *ever* had standing to pursue any of its claims other than for Administrative Procedure Act review of the Order. The only alleged harm Taylor pointed to in connection with the Notice or the other, unspecified "actions" taken pursuant to the Order for which Taylor seeks review was its speculation that installation of the Coast Guard's chosen containment system "may cause" an "environmental catastrophe." Compl. ¶ 36; *see also id.* ¶ 3 (alleging an "extreme risk of adverse environmental consequences that may result from the performance of work at the site without careful deliberation and study of the longstanding pre-existing scientific record"). As Federal Defendants observed in their motion to dismiss, the Complaint cited no evidence to support Taylor's conjecture that a temporary containment system such as Couvillion's would cause such environmental damage; nor did it plead any facts showing how an injury to the environment would injure Taylor itself, or

how judicial relief would redress that injury.  Rec. Doc. 61-1 at 11-12, 15; *see Clapper*, 568 U.S. at 409 (threatened injury must be "*certainly* impending" and not merely "possible" in the future).

In any event, we now know that the containment system was installed successfully and without the "environmental catastrophe" Taylor had predicted could happen.  *See* Facts Nos. 16-20.  Thus, even if Taylor's scant allegations were sufficient at the outset of the case to meet the "injury-in-fact" prong of standing with respect to claims challenging the notice of partial federal assumption and the other unspecified actions, they no longer are sufficient.  Nor can Taylor show that a judgment in its favor on these claims would actually provide meaningful redress now that the containment system is in place and operating.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and enter the attached proposed summary judgment order dismissing all claims with prejudice.

In New Orleans, Louisiana, this 24th day of May, 2019.

Respectfully submitted,

*/s/ Brian H. Lynk*
BRIAN H. LYNK (D.C. BAR # 459525)
  *Trial Attorney*
  U.S. Department of Justice
  Environment & Natural Resources Division
  Environmental Defense Section
  P.O. Box 7611
  Washington, D.C. 20044
  Street address:  601 D Street, NW, Suite 8000
  Washington, D.C. 20004
  (202) 514-6187
  brian.lynk@usdoj.gov

*Of Counsel:*
BRIAN JUDGE
  *Chief, Office of Claims and Litigation*
  United States Coast Guard
  Washington, D.C

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 24th day of May, 2019, I filed the foregoing on counsel of record via the Court's ECF system.

/s/ *Brian H. Lynk*