UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**TAYLOR ENERGY COMPANY LLC**                                 CIVIL ACTION

**VERSUS**                                                                NO: 18-14046 c/w 18-14051

**CAPTAIN KRISTI M. LUTTRELL, IN**                      ORDER PERTAINS TO: 18-14051
**HER OFFICIAL CAPACITY AS**
**FEDERAL ON-SCENE COORDINATOR**                   SECTION: T
**FOR THE MC20 UNIFIED COMMAND,**
**ET AL.**

## ORDER

Before the Court is a Motion for Summary Judgment[1] filed by Couvillion Group, LLC ("Couvillion"). Taylor Energy Company LLC ("Taylor Energy") has filed an opposition.[2] For the following reasons, the motion for summary judgment is **GRANTED.**

## FACTUAL BACKGROUND

This matter arises out of the United States Government's efforts to contain pollution in federal waters adjacent to Louisiana at the site of a Taylor Energy production platform that collapsed during Hurricane Ivan.[3] In September of 2004, Hurricane Ivan traveled through the Gulf of Mexico in the direction of the central Gulf Coast. At that time, Taylor Energy was the lessee and operator of certain assets in the path of Hurricane Ivan, including the MC20A Platform and an Outer Continental Shelf ("OCS") lease that included the MC20A Platform, wells and associated facilities at the MC20 Site. Hurricane Ivan's waves caused a seafloor failure that toppled Taylor Energy's production platform and jacket (the "MC20 Incident"). The jacket currently lies on the seabed in approximately 475 feet of water. The seafloor collapse buried the MC20 wells beneath

---

[1] R. Doc. 191.
[2] R. Doc. 233.
[3] Case No. 18-14051, R. Doc. 1.

approximately 150 feet of mud and sediment, and the well bores for the 28 wells at the MC20 Site rest in a tangled web. Taylor Energy notified the appropriate authorities of the loss of the platform and responded to the MC20 Incident, including addressing a sheen of oil on the water's surface in the area where the platform once stood. Taylor Energy was designated by the Coast Guard as the "Responsible Party" in accordance with the Oil Pollution Act of 1990 ("OPA") and as a member of the "Unified Command," along with the Coast Guard, that was established to monitor the MC20 Site and study possible further actions to be taken.

Taylor Energy's MC20 lease terminated effective June 28, 2007. For more than a decade, the Coast Guard and Taylor Energy acted under the Unified Command structure established under the National Contingency Plan, and engaged in comprehensive collaborative scientific studies, assessments and evaluations, including coordination of all response efforts. Taylor Energy has regularly monitored the site, and continues to do so. On October 23, 2018, Captain Luttrell issued Administrative Order 19-001 relating to response activities at the site of Taylor Energy's partially submerged platform jacket at the MC20 Site. Taylor Energy was ordered "to institute a containment system to capture, contain, and remove oil" from the site, and to evaluate/retain potential contractors to develop a containment system that eliminates surface sheen and avoids the deficiencies associated with Taylor Energy's prior containment systems, among other specific directives.

In November 2018, the Federal On Scene Coordinator ("FOSC") selected Couvillion as a contractor to work at the government's direction to accomplish the oil containment efforts. By selecting Couvillion's proposal, the FOSC and the United States Coast Guard hired Couvillion to fabricate, design and install a containment system to capture oil at the MC20 site. After being

2

selected for the project, the Coast Guard issued a Task Order to Couvillion, an Authorization to Proceed, and a Statement of Work, detailing the different tasks associated with the project.

## **PROCEDURAL BACKGROUND**

On December 20, 2018, Taylor Energy filed three lawsuits in this District after the United States Government partially federalized the pollution containment efforts. In its Complaint against Captain Luttrell and the United States Coast Guard, Taylor Energy requests the Court vacate an October 2018 Administrative Order and all actions taken thereunder, including the selection of Couvillion as a contractor. In its Complaint against Couvillion, Taylor Energy seeks declaratory and injunctive relief pertaining to Couvillion's assignment to work as a contractor for and at the instruction of the Coast Guard to assist in the containment of the oil spill, for which Taylor Energy is designated as the Responsible Party under the Oil Pollution Act of 1990 ("OPA"). In its Complaint against Couvillion, Taylor Energy requests that the Court enter a judgment as follows: (1) recognizing that Couvillion does not have the authority to conduct any activities at the MC20 site; (2) recognizing that Taylor Energy is exonerated and shall not be liable or responsible for any damages, including any environmental damages and any third party claims that may arise as a result of Couvillion's activities at the MC20 site; (3) awarding Taylor Energy all monetary damages that may arise from Couvillion's activities at the MC20 site; (4) entry of permanent mandatory or prohibitory injunctive relief permanently enjoining Couvillion from undertaking any activities at the MC20 site affecting Taylor Energy's property; and (5) awarding Taylor Energy any other legal and equitable relief to which it is entitled and as the Court may deem appropriate, including costs and reasonable attorney's fees.[4]

---

[4] Case No. 18-14051, R. Doc. 1.

On February 7, 2019, Couvillion filed a Motion to Dismiss Taylor Energy's Complaint pursuant to Federal Rule of Civil Procedure 12(b). On February 12, 2019, Taylor Energy filed a Motion for Jurisdictional Discovery and Renewed Motion for Expedited Pre-Trial Conference and Entry of Scheduling Order Allowing for Expedited Discovery. On April 19, 2019, Judge Lemelle ordered limited jurisdictional discovery, and indicated that Couvillion could reurge its Motion to Dismiss in the context of a summary judgment motion after completion of this discovery.[5] Couvillion has now filed a motion for summary judgment contending Taylor Energy's claims against Couvillion are barred, because Couvillion is entitled to immunity as a contractor retained by and providing services to the federal government in response to an oil spill.[6] Couvillion also contends that Taylor Energy's claims against Couvillion directly conflict with the comprehensive federal response scheme set forth by Congress to respond to oil spills, and as such, Taylor Energy's claims are preempted by federal law.[7]

## LAW AND ANALYSIS

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[9] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[10] The party seeking summary judgment

---

[5] R. Doc. 78.
[6] R. Doc. 191.
[7] R. Doc. 191.
[8] Fed. R. Civ. P. 56(a).
[9] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).
[10] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

bears the burden of demonstrating the absence of a genuine issue of material fact.[11] "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial."[12]

Couvillion contends it is entitled to immunity pursuant to *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940), and the Clean Water Act ("CWA"). The Supreme Court outlined the concept of derivative immunity in *Yearsley*, stating that a contractor is entitled to immunity when (1) it performed acts pursuant to a valid authorization of Congress and (2) the contractor did not exceed the scope of that authority.[13] If the federal government "validly conferred" its authority to private parties and this authority was not exceeded, these parties are entitled to derivative immunity.[14] The CWA states that the President, via the FOSC, is to direct all oil spill response efforts on navigable waters of the United States, including those actions undertaken by private parties.[15] Additionally, 33 U.S.C. § 1321(c)(4)(A) explains that a person who is not a responsible party is exempt from liability for: "…removal costs or damages which result from actions taken or omitted to be taken in the course of rendering care, assistance, or advice consistent with the National Contingency Plan or as otherwise directed by the President relating to a discharge or a substantial threat of a discharge of oil or a hazardous substance."

The Court finds the summary judgment evidence submitted supports that both *Yearsley* prongs are met in this case and that Couvillion is, therefore, entitled to immunity. Couvillion cites the deposition testimony of its representative stating that all work associated with the installation

---

[11] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).
[12] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016).
[13] *Id.* at 20–21. *See also In re: Katrina Canal Breaches Lit.*, 620 F.3d 455, 465 (5th Cir.2010).
[14] *See Ackerson v. Bean Dredging, LLC*, 589 F. 3d 196, 206-07 (5th Cir. 2009).
[15] See 33 U.S.C. § 1321 (c)(1)(A), 33 U.S.C. § 1321 (c)(2)(A), 33 U.S.C. § 1321(d)(2)(K); see also 40 C.F.R. § 300.322(b); 40 C.F.R. § 300.120; 40 C.F.R. § 300.135.

of the Rapid Response System was authorized by the U.S. Coast Guard, FOSC, and her representatives.[16] Although Taylor Energy contends that Couvillion was directing the work, Taylor Energy has failed to refute the summary judgment evidence supporting a finding that the government authorized all of Couvillion's work. Taylor Energy's contention that the Coast Guard approved Couvillion's recommended suppliers, for example, does not support the conclusions either that Couvillion did not perform acts pursuant to the valid authorization of Congress or that Couvillion exceeded the scope of its authority. Couvillion's operations were conducted pursuant to its contracts with the Coast Guard, including a Basic Ordering Agreement, Authorizations to Proceed, a Task Order, and a Statement of Work. Therefore, the Court finds that Couvillion is entitled to immunity because it performed acts pursuant to a valid authorization of Congress and it did not exceed the scope of that authority.

## CONCLUSION

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the Motion for Summary Judgment[17] filed by Couvillion Group, LLC is **GRANTED,** and Taylor Energy Company LLC's claims against Couvillion Group, LLC are **DISMISSED WITH PREJUDICE.**

**New Orleans, Louisiana**, on this 21st day of August, 2020.

_____
**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**

---

[16] R. Doc. 191-1, p. 14.
[17] R. Doc. 191.